# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY MASON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 19-cv-1402 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF WHEATON POLICE DEPARTMENT, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Anthony Mason ("Plaintiff")[1] brought this suit against Adam Hines, Dean of Students at Wheaton Warrenville South High School; the Community School District 200 Board of Education ("CUSD 200"); Pasquale Gapostino, Bradley Caliendo, and Robert Lewis, Wheaton police officers; and the City of Wheaton.[2] Defendants Hines and CUSD 200 (collectively "Defendants") moved to dismiss Plaintiff's third amended complaint ("complaint") [95]. For the reasons below, the motion [100] is granted in part and denied in part. Specifically, the motion is denied with respect to Plaintiff's equal protection claim against Defendant Hines in his individual capacity and granted in all other respects. All other claims addressed by Defendants' motion [100], including Plaintiff's equal protection claim against Defendant CUSD 200, are dismissed without prejudice. Plaintiff is given until June 18, 2021 to file an amended complaint if he wishes to do so and can do so in a manner consistent with this order. If Plaintiff wishes to stand on the claims that remain from the operative complaint [95], he should so advise Defendants and the Courtroom Deputy. A joint status report, including a discovery plan, is due seven days after Plaintiff either files an

---

[1] In a prior complaint, Tiffany Fabiyi was also included as a Plaintiff. [See 1].

[2] Plaintiff's prior complaints included additional, now-terminated Defendants. [See 1, 75, 91].

amended complaint or advises that he will stand on the current operative complaint.

I.   **Background**[3]

Plaintiff is an African American male who attended Wheaton Warrenville South High School ("WWSHS") during the 2017–2018 school year. [95, at ¶¶ 1–2]. WWSHS is part of CUSD 200, and it received federal financial assistance, of which Plaintiff was an intended beneficiary. [*Id.*, at ¶¶ 3, 35]. Defendant Hines was Dean of Students at WWSHS at all times relevant to this matter. [*Id.*, at ¶ 4]. Plaintiff alleges that "CUSD 200 delegated to Hines final policy making authority for all disciplinary matters concerning WWSHS students." [*Id.*, at ¶ 5].

On Wednesday, December 13, 2017,[4] Plaintiff was involved in an altercation at school, causing Defendant Hines to issue him a suspension and send him home. [*Id.*, at ¶ 12]. Defendant Hines informed Plaintiff that his suspension was for two days. [*Id.*, ¶¶ 14]. However, Defendant Hines suspended Plaintiff for 10 days and did not inform Plaintiff of this change. [*Id.*, at ¶¶ 14–15]. Not knowing his suspension was still in place, Plaintiff returned to school on December 18, and a teacher advised him to report to Defendant Hines' office. [*Id.*, at ¶¶ 16–17]. When Plaintiff arrived, Defendant Hines did not inform Plaintiff that his suspension was still in effect and instead told Plaintiff to take a seat that that he would return shortly. [*Id.*, at ¶¶ 18–19]. Defendant Hines returned with two police officers who demanded that Plaintiff stand up so that they could place him under arrest. [*Id.*, at ¶¶ 20–21]. Not knowing why he was being placed under arrest, Plaintiff initially refused to stand up. [*Id.*, at ¶ 22]. The officers then placed Plaintiff in a chokehold and wrestled him to the ground, violently twisting his arms behind his back and handcuffing him. [*Id.*,

---

[3] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[4] Later, the complaint refers to December 2018. [See 95, at ¶¶ 16–17]. Because the complaint also discusses the 2017–2018 school year, the Court assumes that the events took place in December 2017.

at ¶ 23]. Plaintiff was forcibly removed from school property in handcuffs, taken into custody, charged with criminal conduct, and remained in custody for several days. [*Id.*, at ¶ 23–25]. "The suspension, excessive force, arrest and detention * * * had the impact of excluding [Plaintiff], a student on an Individualized Education Program ('IEP') from participation in and the denial of benefits of his education." [*Id.*, at ¶ 37].

Plaintiff alleges that "Defendants acted with a nefarious discriminatory purpose" and "caused [him] to be arrested because of his race, African American." [*Id.*, at ¶¶ 29, 38]. Similarly situated non–African American students were not subject to the same treatment as Plaintiff. [*Id.*, at ¶ 32]. Plaintiff also alleges that "Defendants' conduct caused [him] to be subjected to the use of excessive force by the Wheaton police officers, false arrest and detention." [*Id.*, at ¶ 31].

Plaintiff then brought this suit against Defendants. Relevant here,[5] Plaintiff's complaint includes (1) a 42 U.S.C. § 1983 claim against CUSD 200 and "Hines, individually" for violation of the equal protection clause, (2) a claim for a violation of Title VI of the Civil Rights Act of 1964 against CUSD 200, and (3) a claim for negligent infliction of emotional distress against CUSD 200 and "Hines in his individual capacity." [95, at ¶¶ 27–27]. The Defendants moved to dismiss these three counts [100].

## II.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley*

---

[5] Plaintiff also brings a claim for excessive force "against the City of Wheaton and its police officers," which is not at issue in this motion to dismiss. [95, at ¶¶ 49–53].

v. *Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618. A complaint can be dismissed based on an affirmative defense only "if it [is] clear from the face of the complaint that the affirmative defense applied." *Bibbs v. Sheriff of Cook Cnty.*, 618 F. App'x 847, 849 (7th Cir. 2015).

### III. Analysis

#### A. Equal Protection Claim

##### 1. Defendant Hines

Defendants first argue that Plaintiff's equal protection claim against Defendant Hines fails because it is duplicative of the claim against Defendant CUSD 200. In doing so, Defendants assume that "Plaintiff intends to seek liability against Hines in his official capacity." [102, at 3]. Defendants also suggest that Plaintiff cannot bring an individual claim against Defendant Hines because Plaintiff alleges that he "was Dean of Students 'at all times relevant to this matter' and that the conduct alleged * * * occurred at the District where Hines is employed as Dean of Students." [*Id.*]. However, the complaint states this claim against "Hines, individually." [95, at 4]. Further, Defendants' argument seems to conflate the concept of official capacity with the concept of acting within the scope of employment. "A defendant who acted within the scope of his or her employment may still be sued under § 1983 in his or her individual capacity." *Henry v. Hogarth*, 2011 WL 744890, at *2 n.1 (S.D. Ind. Feb. 23, 2011) (citing *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 637 (7th Cir. 2009)); see also *Hafer v. Melo*, 502 U.S. 21, 27–29 (1991)

4

(rejecting the argument that "state officials may not be held liable in their personal capacity for actions they take in their official capacity"). Thus, Defendants' first argument fails.[6]

Next, Defendants argue that Plaintiff fails to state a claim against Defendant Hines because Plaintiff did not allege that Defendant Hines was personally involved in any constitutional deprivations. [102, at 5–7]. Defendants are correct that "individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). Here, Defendants argue that Plaintiff alleges that Defendant Hines caused Plaintiff to be subjected to excessive force, false arrest, and detention when he opted to involve the police. And, Defendants continue, summoning the police "is not sufficient to state a Section 1983 claim." [102, at 6]. In making this argument, however, Defendants rely on cases concluding that a private citizen does not become a state actor for § 1983 purposes by calling the police. See *Smith v. Hilton Chicago O'Hare*, 2009 WL 3617509, at *3 (N.D. Ill. Oct. 27, 2009) (finding that the plaintiff's claim that Hilton employees racially discriminated against him by calling the police failed because he "failed to allege any state action"); *Bally's Health & Tennis Corp. v. Almaui*, 1997 WL 766884, at *6 (N.D. Ill. Dec. 3, 1997) (finding that § 1983 liability did not attach to private actor who "attempt[ed] to call the police"). These cases are distinguishable because here, Defendant Hines is a state actor and was acting as Dean of Students.

That said, to the extent that Plaintiff claims that Defendant Hines is liable for constitutional violations committed by the police officers—excessive force, false arrest, and unreasonable seizure—this claim fails. "An official causes a constitutional violation if he sets in motion a series

---

[6] It is for this same reason the Court declines Defendants' invitation to strike Plaintiff's request for punitive damages against Defendant Hines. [See 102, at 11 (arguing that punitive damages are unavailable against Defendant Hines because they are unavailable against defendants sued in their official capacities)].

5

of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 487 (7th Cir. 2011) (quoting *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000)). Although the complaint alleges that Defendant Hines summoned the police, there is nothing to suggest that he "knew or reasonably should have known" that the officers would violate Plaintiff's rights once they arrived. *Id.* However, this does not end the analysis. As Plaintiff argues, he alleges that Defendant Hines failed to accurately notify Plaintiff of the length of his suspension, and he alleges that Defendant Hines "elected to utilize police force against [him] rather than attempt to clarify the misunderstanding that brought [him] to school that day." [105, at 6]. He also alleges that Defendant Hines acted with racially discriminatory purpose and that similarly situated non–African Americans were not subject to the same treatment.[7] [95, at ¶¶ 29, 32]. Thus, Plaintiff alleges that Defendant Hines enforced the discipline against Plaintiff differently because of Plaintiff's race and has stated an equal protection claim. See *Doe v. Sch. Dist. 214*, 2021 WL 1239200, at *11–12 (N.D. Ill. Apr. 2, 2021) ("To establish an equal protection claim, [Plaintiff] 'must demonstrate that (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent.'" (quoting *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000))). The Court therefore declines to dismiss Count I against Defendant Hines.

    **2.    Defendant CUSD 200**

Defendants next argue that Plaintiff's equal protection claim against Defendant CUSD 200 must fail because he did not plead facts sufficient for *Monell* liability. [102, at 3–5]. Because there is no *respondeat superior* § 1983 liability, a plaintiff must allege that a government entity is

---

[7] The Court notes that on this point, Defendants do not argue that Plaintiff inadequately alleged racial discrimination, only that Defendant Hines was not personally involved in any violation.

directly responsible for any constitutional violation. See, *e.g.*, *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 598 (7th Cir. 2019). "One way in which a municipality may be liable for a section 1983 violation is if 'an individual with final policymaking authority for the municipality (on the subject in question) caused the constitutional deprivation.'" *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) (quoting *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009)). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). Instead, the "official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482–83. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority * * * ." *Id.* at 483. "Officials with *final* decisionmaking authority are deemed policymakers for *Monell* purposes, and [courts] look to state law to determine the scope of such authority." *Valentino*, 575 F.3d at 676. "Helpful in determining whether an official is a final decisionmaker is an inquiry into: (1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) 'whether the policy decision purportedly made by the official is within the realm of the official's grant of authority.'" *Id.* (quoting *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995)).

Whether an individual is a final policymaker is a question of state law. *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 737 (7th Cir. 1999). "In Illinois, the School District's Board of Education has full power to manage the schools and to adopt all rules and regulations needed for that broad purpose." *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist.*

*No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (citing 105 Ill. Comp. Stat. Ann. 5/10-20.5); *see also Jaythan v. Bd. of Educ. of Sykuta Elementary Sch.*, 219 F. Supp. 3d 840, 846–47 (N.D. Ill. 2016 ) ("[T]he Illinois School Code does not provide [principals] with final policymaking authority."). Final policymaking authority can be delegated, and in his complaint, Plaintiff alleges that "[a]s Dean of Students, Hines was delegated by CUSD 200 with final policymaking authority for all disciplinary matters related to students at WWSHS." [95, at ¶ 44]. And in his briefing, Plaintiff argues that Defendant Hines had final policymaking authority when he summoned the police because he was a final decisionmaker under the three *Valentino* factors. Specifically, he argues that (1) Defendants did not "point[] to any school district rules or regulations or any legislation" influencing or constraining Defendant Hines' conduct, (2) "the decision to summon the police appears to have been made without any time for a meaningful review by anyone on the school board," and (3) Defendant Hines was "acting within the realm of his authority to summon the police." [105, at 4–5]. However, Plaintiff does not point to anything indicating that CUSD 200 delegated authority, and "the absence of a written policy is not enough to support an inference that final policymaking authority has been delegated to a subordinate." *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1325 (7th Cir. 1993). Moreover, the "'mere unreviewed discretion' to make decisions does not amount to a delegation of *policymaking* authority." *Smith v. Ill. Sch. Dist. U-46*, 120 F. Supp. 3d 757, 776 (N.D. Ill. 2015) (quoting *Valentino*, 575 F.3d at 676).

As Defendants note [108, at 4], Plaintiff's argument runs afoul of principles articulated by the Seventh Circuit in *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464 (7th Cir. 2001). There, the principal did not approve the contents of a banner that the school's bible club wanted to hang in the hallway, and the plaintiffs argued that the school district was liable for any resulting

8

constitutional violation because the principal was a final decisionmaker. *Id.* at 466, 469. In analyzing this argument, the Seventh Circuit first noted that the "final decisionmaking authority of the school district [was] lodged in the district's school board, but the board has promulgated regulations that delegate the administration of the five high schools in the school district to the principal of each school." *Id.* at 468–69. However, the court determined that such delegation could not have rendered the principal a final decisionmaker with regard to the banner because doing so "would collapse direct and derivative liability." *Id.* at 469. It explained that "a teacher does not have to consult anyone before flunking a student," but that does not make the teacher a final decisionmaker for *Monell* purposes. Here, Plaintiff argues that Defendant Hines is a final decisionmaker in part because "the decision to summon the police appears to have been made without any time for a meaningful review by anyone on the school board." [105, at 4–5]. However, determining that every similarly unreviewable decision made by a school administrator creates *Monell* liability "would collapse direct and derivative liability." *Gernetzke*, 274 F.3d at 469. Accordingly, the equal protection claim against Defendant CUSD 200 is dismissed.

B. **Title VI Claim**

Defendant next argues that Plaintiff's Title VI claim against Defendant CUSD 200 must be dismissed because he does not allege that Defendants operated a program or activity that discriminated against him. Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI and Title IX are so similar that a decision interpreting one generally applies to the other." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). As there is no *respondeat superior* liability for Title IX violations, see *Gebser v.*

9

*Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998), courts conclude that there is likewise no *respondeat superior* liability for Title VI violations, see, *e.g.*, *Shebley v. United Cont'l Holdings, Inc.*, 2020 WL 2836796, at *6 (N.D. Ill. May 31, 2020). Thus, Defendant CUSD 200 must be responsible for discrimination in order to be liable under Title VI. When potential Title VI liability arises not from a school district's policies but instead from an act of its employee, the district can nevertheless be liable if "an official of the school district who at a minimum has authority to institute corrective measures * * * has actual notice of, and is deliberately indifferent to, the" discriminatory conduct. *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012) (quoting *Gebser*, 524 U.S. at 277).

Defendants argue that Plaintiff's allegations that Defendant Hines discriminated against Plaintiff amount to a claim of *respondeat superior* liability. [102, at 7]. Plaintiff counters that Defendant Hines is a school official who had actual knowledge of and control over the discriminatory conduct. [105, at 7]. Although true—Defendant Hines has knowledge of and control over his own conduct—such a standard again would collapse the Title VI standard into *respondeat superior* liability, as all school district employees have actual knowledge and control over their own conduct. Perhaps this is why Plaintiff did not cite, and the Court could not locate, a case in which knowledge of and control over one's own actions met Title VI's standard.[8] To the extent that Plaintiff's argument relies on Defendant Hines being a final policymaker, it fails for

---

[8] Although not directly on point, when the Supreme Court explained why Title IX protected individuals from retaliatory conduct, it provided the following example: "[I]f a principal sexually harasses a student, and a teacher complains to the school board but the school board is indifferent, the board would likely be liable for a Title IX violation." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 180 (2005). The Court explained that if the teacher was not protected from retaliation, then she would be less likely to report discrimination, "and the underlying discrimination would go unremedied." *Id.* at 181. The logic of this example is dependent on the principal's own knowledge and control of his sexually harassing conduct being insufficient to create Title IX liability for the school district. Thus, this language supports finding Defendant Hines' knowledge and control of his conduct insufficient to create liability for Defendant CUSD 200.

10

the reasons explained above. Therefore, the Court dismisses the Title VI claim against CUSD 200.

### C. Negligent Infliction of Emotional Distress

Defendants next argue that the Illinois Tort Immunity Act ("TIA") immunizes them against Plaintiff's negligent infliction of emotional distress claim. [102, at 9–11; 108, at 13–14]. "Discretionary immunity under the Tort Immunity Act is an affirmative defense for which Defendants bear the burden of proof." *Lane v. Dupage Cnty. Sch. Dist. 45*, 2014 WL 518445, at *3 (N.D. Ill. Feb. 10, 2014). Plaintiffs need not anticipate affirmative defenses, and instead "the complaint must 'plainly reveal' 'everything necessary to satisfy the affirmative defense.'" *McDonald v. Camarillo*, 2010 WL 4483314, at *2 (N.D. Ill. Nov. 1, 2010) (*quoting United States v. Louis*, 411 F.3d 838, 842 (7th Cir. 2008)).

In relevant part, the TIA provides that, "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 Ill. Comp. Stat. 10/2-201. "Because '[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable,' this broad discretionary immunity applies to the entities themselves." *Arteman v. Clinton Cmty. Unit Sch. Dist. No. 15*, 763 N.E.2d 756, 762–63 (Ill. 2002) (alteration in original) (quoting 745 Ill. Comp. Stat. 10/2-109). For immunity to apply, "the employee's position may involve either determining policy or exercising discretion, but the employee's 'act or omission must be both a determination of policy and an exercise of discretion.'" *Id.* at 763 (quoting *Harinek v. 161 N. Clark St. Ltd. P'ship*, 692 N.E.2d 1177, 1181 (Ill. 1998), abrogation on other grounds recognized by *Tzakis v. Maine Twp.*, 2020 WL 6788163, at *6–7 (Ill. Nov. 19, 2020)). Under this standard, policy decisions are "those decisions which require the

municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *West v. Kirkham*, 588 N.E.2d 1104, 1109 (Ill. 1992); see also *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 474, 758 N.E.2d 848, 853 (Ill. 2001) (finding that a principal made a policy decision when declining to dismiss a student early due to inclement weather because he "had to balance the competing interests of [the student's] desire to leave early before the weather worsened with that of the school's interest in an orderly dismissal," among other factors). "[D]iscretionary acts are those which are unique to a particular public office," as opposed to "ministerial acts," which are "those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993 (Ill. 1995).

Here, Defendants argue that Defendant Hines' actions in imposing and enforcing the suspension were both policy decisions and discretionary acts. In response, Plaintiff notes that the TIA is an affirmative defense, and he contends that "it is not apparent from the face of the complaint whether immunity applies." [105, at 9]. Specifically, Plaintiff argues that the complaint does not include enough facts for the Court "to make an informed determination as to whether the conduct in question constituted a discretionary act." [*Id.*, at 10]. To Plaintiff's point, whether the TIA applies "is a fact-specific inquiry and can be done 'only on the particular facts established in a particular case.'" *Doe I v. Bd. of Educ. of City of Chi.*, 364 F. Supp. 3d 849, 867 (N.D. Ill. 2019) (quoting *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 923 (C.D. Ill. 2009)). That said, Plaintiff alleged that "[a]s Dean of Students, Hines was delegated by CUSD 200 with final policymaking authority for all disciplinary matters related to students at WWSHS." [95, at ¶ 44]. Although, as described above, this allegation does not make Defendant Hines a final policymaker for *Monell*

purposes, it does indicate that Defendant Hines had discretion in disciplinary matters. Further, elsewhere in his briefing, Plaintiff suggests that there were not "any school district rules or regulations or any legislation that would have influenced or constrained Hines in his decision-making process." [105, at 4]. Thus, both the facts in Plaintiff's complaint and the arguments in his briefing support the conclusion that Defendant Hines' actions were discretionary and not ministerial.

Plaintiff makes no argument on the other prong of the TIA test. That is, Plaintiff does not argue that Defendant Hines' actions were not policy decisions. Moreover, courts frequently find that disciplinary decisions are policy decisions because they involve balancing competing interests. See *Albers v. Breen*, 806 N.E.2d 667, 675 (Ill. App. 2004) ("A school principal dealing with a disciplinary matter must balance competing interests—the confidentiality of his information source, the appropriate level of punishment, the concerns of all the children's parents, the impact of his decision on the student body generally—and make a judgment as to what balance to strike among them."); *Castillo v. Bd. of Educ. of City of Chi.*, 103 N.E.3d 596, 601(Ill. App. 2018) (explaining that decisions related to "school discipline" are "covered by section 2-201 immunity"). Because Defendant Hines' conduct was both a discretionary and a policy decision, Defendants are entitled to immunity under the TIA. See *Arteman*, 763 N.E.2d at 762–63. Accordingly, the Court dismisses Plaintiff's negligent infliction of emotional distress claim against Defendants Hines and CUSD 200.

IV. **Conclusion**

For the reasons above, Defendants' motion to dismiss [100] is granted in part and denied in part. Specifically, the motion is denied with respect to Plaintiff's equal protection claim against Defendant Hines in his individual capacity. All other claims addressed by Defendants' motion

[100], including Plaintiff's equal protection claim against Defendant CUSD 200, are dismissed without prejudice. Plaintiff is given until June 18, 2021 to file an amended complaint if he wishes to do so and can do so in a manner consistent with this order. If Plaintiff wishes to stand on the claims that remain from the operative complaint [95], he should so advise Defendants and the Courtroom Deputy. A joint status report, including a discovery plan, is due seven days after Plaintiff either files an amended complaint or advises that he will stand on the operative complaint.

Dated: May 17, 2021

Robert M. Dow, Jr.
United States District Judge